## District 50, United Mine Workers of America v. Quaker City Iron Works, Inc.

*Benjamin Lipschultz*, for plaintiff.

*Lloyd J. Schumacker*, for defendants.

CHUDOFF, J., January 8, 1963.—This is an action in equity brought by District 50, United Mine Workers of America, against defendant companies, Robert Wilson and Arthur R. Robertson, Jr., individually. The

complaint asks that this court order the individual defendants to sign pension checks drawn on a pension fund established pursuant to a collective bargaining agreement, in varying amounts up to a maximum of $70 per month, payable to 26 retired employes until the fund is fully disbursed.

The facts are uncontroverted. Therefore, by stipulation of counsel for all the parties, the chancellor makes the following

### Findings of Fact

1. Plaintiff is District 50, United Mine Workers of America, an unincorporated association, by August Rouse, trustee ad litem.

2. The initial defendants are Quaker City Iron Works, Inc., Quaker City Tank Company, a Pennsylvania corporation, and Philadelphia Valve Co., a copartnership. The additional defendants are Robert Wilson and Arthur R. Robertson, Jr., who are the employer-representatives on the pension committee involved in this matter.

3. Plaintiff is a labor union which for a number of years prior to November 3, 1960, represented the production and maintenance employes of defendant companies. Defendant companies were associated companies operating in plants bounded by Aramingo Avenue, Ontario Street, Tioga Street and Gaul Street, Philadelphia, Pennsylvania.

4. On April 1, 1952, plaintiff union and defendant companies entered into a collective bargaining agreement which, among other things, provided for the setting up of a pension trust and pension plan.

5. By subsequent agreement between the union and defendant companies, the pension trust and pension plan were continued. The later agreements were dated April 1, 1953, April 1, 1954, July 20, 1955, June 21, 1956, and November 3, 1958. It was provided in all of these agreements that the *employer* should pay to Prov-

ident Tradesmens Bank and Trust Company, the corporate trustee under the pension plan, the sum of five cents per hour for all hours worked by employes within the bargaining units represented by the plaintiff union: Article 19 of agreement dated November 3, 1958.

6. Defendant companies paid into the Provident-Tradesmens Bank and Trust Company the sums provided by the bargaining agreement with plaintiff union, which sums were held in trust by the corporate trustee under the terms of the pension trust agreement.

7. The contract of November 3, 1958, terminated on November 3, 1960. Prior to its termination an election was held to determine the bargaining agency of the production and maintenance employes of defendant companies and the result of that election was that a new bargaining agent, United Auto Workers, was elected by the employes within that unit.

8. By reason of the termination of the bargaining agreement and the selection of a new bargaining agent by the employes, both the union and employer companies gave notice of termination of the pension trust agreement, pursuant to its terms. In addition, no further sums were paid into the pension fund by the defendant employer companies subsequent to November 3, 1960. However, all sums provided by the respective bargaining agreements had been paid into the pension fund by defendant employer companies up to that date.

9. As of November 3, 1960, 26 employes of defendant companies within the unit covered by the pension plan had retired and were receiving benefits as of that date.

10. The pension plan provided for benefits to a maximum amount of $70 per month, depending on the length of service of respective employes. Payments of the monthly benefits were made to the 26 retired

employes for the months of November and December, 1960, and January, 1961. No payments have been made to any of the beneficiaries of the pension trust subsequent to the month of January, 1961, by reason of the uncertainty with regard to the sums properly payable to the respective beneficiaries of the respective trusts.

11. Immediately after November 3, 1960, defendant companies entered into negotiations with United Auto Workers, representing the production and maintenance employes of the defendant companies, which negotiations ended in the execution of a bargaining agreement between defendant companies and United Auto Workers, dated June 30, 1961. That agreement provided for the setting up of a new pension plan. This new pension fund is entirely separate and distinct and has no relation whatever to the pension fund established previously by agreement between defendant companies and District 50, United Mine Workers.

12. Contemporaneously with the termination of the pension trust agreement set up pursuant to the bargaining agreement between plaintiff union and the bargaining companies, plaintiff union requested the employer representatives on the pension committee to agree to a disposition of the fund on hand by purchasing annuities from a life insurance company for the retired employes, to the extent that the fund on hand would reach. At that time, the representative of plaintiff union estimated this would provide monthly benefits to those retired employes who are entitled to the maximum benefits in the amount of approximately $55 per month.

13. At the institution of these proceedings, there were 236 *non*-retired employe participants, or persons interested in their estates where such persons are deceased, under the pension plan and trust agreement established pursuant to the collective bargaining agree-

ment between District 50, United Mine Workers and defendant companies, as of the date of the termination of the plan on November 3, 1960.

14. In the bargaining negotiations between defendant companies and United Auto Workers, that union asserted on behalf of the employes in the bargaining unit that it then represented a claim for a portion of the pension fund that had been set up pursuant to the agreement between plaintiff union and defendant companies.

15. Because the 236 non-retired employes through their bargaining agent, United Auto Workers, had laid a claim to some portion of the fund, plaintiff union laid claim to the entire fund on behalf of the retired employes, the employer representatives considered that they could not safely make payments from the pension fund. This was the reason for the discontinuance of the pension payments for the month of January, 1961, when it was ascertained that the amount in the fund was not even sufficient to provide full pension benefits for the retired employes.

16. On April 4, 1962, John E. Littleton, Esq., was appointed by the Honorable Edward J. Griffiths to represent 26 employes, or the persons interested in their estate for such persons as are now deceased, who were retired and receiving benefits on November 3, 1960, under the pension plan and trust agreement established as aforesaid.

17. On September 5, 1962, the chancellor appointed Leon Sacks, Esq., trustee ad litem to represent the 236 non-retired employes who were participants under the pension plan and trust agreement established as aforesaid, but who were not receiving benefits on that date.

18. As of September 5, 1962, the market value of the pension fund as provided by the corporate trustee aggregates $163,215, in addition to which there is $1,334.66 of cash income.

*Discussion*

The issue simply stated is: Under the agreement who are the proper recipients of distribution of the pension fund as of November 3, 1960?

Where an employer's pension plan is regarded as giving rise to an enforceable obligation, the plan usually sets up certain conditions which the employe must satisfy before becoming entitled to benefits. It is now generally accepted that an employe seeking to enforce his rights under the pension plan must establish that he has satisfied *all* of the necessary prerequisites of eligibility: Harper v. General Cable Corp., 99 Pitts. L. J. 115 (1951); Marquart v. Balt. & O. R. Co., 49 Ohio App. 141, 195 N.E. 396; Bromberg v. United Cigar-Whalen Stores Corp., 125 N.Y.L.J. 687, 19 C.C.H. Lab. Cas. 66203 (1951 N.Y.).

In other words, the right to benefits is ordinarily conditioned upon the completion of a certain period of service, attainment of a certain age, or a combination of these two factors. Usually it has been held that the satisfaction of such conditions is a prerequisite to eligibility under the plan: Bos v. U. S. Rubber Co., 100 Cal. App. 2d 565, 224 P. 2d 386 (1950); Markus v. Boston Edison Co., 317 Mass. 1, 56 N.E. 2d 910 (1944); Twiss v. Lincoln Tel. & Tel. Co., 136 Neb. 788, 287 N.W. 620 (1939), 42 A.L.R. 2d 487.

Requirements to be met before an employe covered by the present plan is entitled to benefits thereunder are explicitly set forth in the pension agreement. Article 6, section 10, of the pension agreement provides as follows:

"Section 10. Upon the termination of this Agreement the Pension Committee herein provided for shall continue in existence for the purpose of disbursing any funds remaining in the Pension Fund to the persons entitled to receive benefits from said Fund as

herein provided, until such time as said Fund as herein provided has been fully disbursed."

The procedure set forth in the pension agreement, whereby an employe otherwise eligible becomes "entitled to receive benefits from said Fund" can be summarized as follows: the employe must make application to the pension committee for benefits under the agreement "on a form shown in Exhibit C . . ." (§6 of art. 5, pension agreement); the application for benefits must be approved by the pension committee (§§1, 2, 3, 4 of art. 5, pension plan.).

Section 1 of article 4 of the pension agreement provides:

"Section 1. Employees who are retired from their employment with the 'Employer' as provided herein on or after July 1, 1952, shall, to the extent that funds are available therefor under this Agreement, be entitled, subject to all the terms and conditions of this Agreement and of said Trust Agreement, to a retired benefit, payable from said Pension Fund, as follows:"

After following the procedure outlined above, as provided for in the pension agreement, it is "employees who are retired from their employment with the 'Employer' as provided herein . . . shall . . . be entitled . . . to retirement benefit, payable from said pension fund."

From the above language, it is plain that the intent of the parties as clearly expressed was that no employe would be entitled to any money or other property held by the trustee until and unless he acquired the status of a retired employe under the plan. The pension plan makes no provision of any kind or in any form for the vesting of any rights in an employe to any moneys or assets in the pension fund until and unless retired in accordance with the terms of the plan. This is borne out by section 1 of article 6, which reads in part:

"Section 1. . . . No employee or retired employe shall have any right or interest in any money or other property held by the Trustee unless and until he becomes entitled thereto as provided in the Agreement and the Exhibits hereto attached."

Without equivocation, the only persons who have become so entitled are the 26 employes who are retired and were receiving benefits when the plan terminated. Only they were retired at that time and only they had made application to the pension committee, as required, and had been determined by it to have been entitled to retirement benefits.[1]

We think that under the foregoing provisions of the pension plan and under the applicable law the 236 non-retired employes have not yet qualified for a pension of any kind and had no vested rights in the pension fund: Finnell v. Cramet, Inc., 289 F. 2d 409, 413 (6th Cir. 1961); Schneider v. McKesson & Robbins, Incorporated, 254 F. 2d 827, 829-30 (2nd Cir. 1958).

Moreover, the agreements involved were terminated as a result of an election in which the United Auto Workers replaced the United Mine Workers as representatives of the 236 employes still employed; that the United Auto Workers entered into an agreement with the companies whereby a new pension plan covering the employes represented by it was established and that the company has since been making payments into a trust fund for the benefits of employes covered by that plan. In Kravitz v. Twentieth Century-Fox Film Corp., 5 N. Y. Misc. 2d 364, 160 N. Y. Supp. 2d 716, 719 (1957), where the circumstances parallelled the instant case, the court said:

". . . The terms of the Retirement Plan give no vested rights to others than those specifically provided

---

[1] By reason presumably of attainment of required age and length of employment or "complete disablement while in the employ of the company": Art. 4, §§1, 2, pension agreement.

for. Neither on September 1, 1949, September 1, 1950, nor on February 8, 1951, had these plaintiffs or either of them come under the provisions of the Retirement Plan so as to entitle them or him to benefits, which he may have lost or been deprived of by the contract of February 8, 1951. Specifically none of the plaintiffs had attained age 50 as provided in paragraph 3, subdivision d of the Retirement Plan, although each had been employed 15 or more consecutive years. The most that may be said for plaintiffs is that each enjoyed an inchoate gift. This never ripened into a vested one. The Retirement Plan was terminated and the plaintiffs came under the provisions of another industry-wide pension plan. Under the terms of this new plan their years of employment were credited to them."

We, therefore, enter the following:

### Conclusions of Law

1. The court has jurisdiction over the parties and subject matter.

2. The rights of the parties to the balance of the fund are to be determined as of the time of termination of the agreement dated November 3, 1960.

3. The 26 retired employes have a vested right to the pension fund. The 236 non-retired employes have no vested interest in the pension fund.

4. The 26 retired employes are entitled to receive retroactive pension payments in full.

### Decree Nisi

And now, January 8, 1963, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

It appearing that the amount in the pension fund involved in this case is insufficient to purchase lifetime annuities for the 26 retired employes in the full amount of monthly benefits provided by the pension plan in this case, it is hereby ordered and decreed that:

Defendants, Robert Wilson and Arthur R. Robertson, Jr., and plaintiff, August Rouse, comprising the pension committee under provisions of the pension trust agreement entered into between plaintiff, District 50, United Mine Workers of America, and defendants, Quaker City Iron Works, Inc., Quaker City Tank Co. and Philadelphia Valve Co., are hereby authorized and directed to distribute the balance in the pension fund existing pursuant to said pension trust agreement as follows:

A. To pay to August Rouse, trustee ad litem for District 50, United Mine Workers of America, an unincorporated association, and Benjamin Lipschultz, Esq., attorney for August Rouse, trustee, and Lloyd J. Schumaker, Esq., attorney for Robert Wilson and Arthur R. Robertson, Jr., trustees and members of the pension committee, and John E. Littleton, Esq., trustee ad litem, and Leon Sacks, Esq., trustee ad litem, counsel fees in the respective sums approved by this court;

B. To apply the balance of said pension fund to the purchase, from a properly qualified life insurance company approved by the court, of lifetime annuities for such of said 26 retired employes who were retired under said pension plan on November 3, 1960, and who are now living, said lifetime annuities to be payable in monthly installments in proportion to the retirement benefits to which each of said retired employes is respectively entitled, to be computed and paid retroactively to the first month for which monthly pension payments were not made, in such maximum sums as, together with the payments hereinafter provided, shall exhaust said pension fund, and to pay to the personal representatives or next of kin of such of said 26 retired employes who were retired under said pension plan on November 3, 1960, and who have since died, such sums as shall be calculated by the actuaries of the aforementioned life insurance company to be the pro rata amount

properly payable to the personal representatives or next of kin of the respective deceased retired employes;

C. All costs of these proceedings shall be paid prior to any distribution out of funds now in the hands of Provident Tradesmens Bank and Trust Co., corporate trustee under the pension plan; and

D. The prothonotary shall notify the parties hereto of the filing of this adjudication and unless exceptions are filed by either party within 20 days after such notice this decree nisi shall be entered as of course by the prothonotary as a final decree.